**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**LEE MITCHELL JOHNSON,**

    **Plaintiff,**

vs.                                                                       Case No.: 4:22-cv-00412-MW-MAF

**LT. MCKINNEY,**
**et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding *pro se* and *in forma pauperis*, submitted two unsworn filings seeking injunctive relief. ECF Nos. 13, 14. The first is entitled "Order to Show Cause for a[] Preliminary Injunction and a Temporary Restraining Order," which also contains a request for welfare checks from a "special counsel." ECF No. 13. The second filing is entitled "Plaintiff's Notice to Court of Retaliation and Request for Preliminary Injunction and Temporary Restraining Order Against Defendants Sergeant Prock and Lieutenant McKinney." ECF No. 14. The Court liberally construes Plaintiff's filings as requests for temporary restraining orders (TROs) under Fed. R. Civ. P.

65(b)(1) and a second request to appoint counsel.[1] ECF No. 13. For the reasons stated below, the request for counsel is due to be denied without prejudice; and the requests for temporary restraining orders are deferred to the presiding judge with the recommendation that they be denied. A brief discussion of Plaintiff's allegations in this case and the procedural posture of the case is warranted.

**I.  Background**

  A. Plaintiff's Operative Complaint, ECF No. 10

Plaintiff alleged that, between September 2 and September 29, 2022, six Florida State Prison (FSP) officials orchestrated and participated in an ongoing campaign of retaliation against him for filing prior civil rights lawsuits against prison officials. See Plaintiff's amended complaint, ECF No. 10. Plaintiff alleged physical abuse and the denial of medical treatment and food in violation of the Eighth Amendment. Id. Plaintiff named Lt. McKinney, Sgt. Prock, Sgt. Tyre, Sgt. Fowler, Officer J. Manning, and Sgt. Atterberry. Id., pp. 1-11.

According to Plaintiff, upon his arrival to FSP, certain defendants called him a "child molester who likes writing grievances and filing lawsuits" and

---

[1] Plaintiff's filings are construed as motions for temporary restraining orders because Defendants have not yet been served in this case.

warned they would "cure" him. Id. On one occasion, Prock and Atterberry took Plaintiff to a cell and beat him while he was handcuffed and in leg irons. Id. Plaintiff suffered physical injuries and was refused medical treatment. Id. From September 9 through September 26, 2022, Fowler and Manning refused to feed Plaintiff breakfast and warned he would starve until he dropped the lawsuits. Id., p. 7. During this period, Tyre denied Plaintiff lunch and dinner and threatened to starve him. Id., p. 8.

On September 15, 2022, Tyre handcuffed Plaintiff behind his back and held him in a chokehold from behind until Plaintiff passed out. Id., p. 8. Tyre threatened to kill Plaintiff unless he dropped the lawsuits. Six days later, Fowler woke Plaintiff, handcuffed him, slammed him against the wall, choked him, and made similar threats. Id.

On September 28, 2022, McKinney came to Plaintiff's cell, handcuffed Plaintiff behind his back, beat him with a chain attached to leg irons, and threatened to kill him. Id., p. 10. Plaintiff suffered multiple cuts, welts, and bruises and, again, was refused medical treatment. Id. The next day, Prock beat Plaintiff causing him to suffer a black eye, blurry vision, headaches, back and neck pain, and a bloody nose. Id., pp. 10-11.

Plaintiff claimed that he would eat almost anything to take away the hunger pains including toilet paper, soap, toothpaste, and peeling paint. Id.,

p. 12. Plaintiff complained of psychological injuries -- he lives in constant fear and has panic attacks and nightmares. Id. Plaintiff seeks compensatory and punitive damages. Id., p. 15.

B. Procedural Posture of the Case

The Court determined Plaintiff's amended complaint was sufficient to serve upon Defendants and ordered him to provide service copies of his complaint to the Court by February 10, 2023.[2] ECF No. 12. As of the date of the drafting of this Report, Plaintiff has not provided the service copies of the complaint. Instead, Plaintiff filed the instant motions for temporary restraining orders against the Defendants and other non-parties. ECF Nos. 13, 14.

II. **The Motions for Temporary Restraining Orders, ECF Nos. 13,14**

A. Plaintiff's First Motion for TRO, ECF No. 13

In the first motion, Plaintiff alleges that he is subjected to abuse not only by Defendants but by other correctional officials who are involved in the retaliation campaign. ECF No. 13, p. 2. According to Plaintiff, some officers are unknown because they do not wear identification badges, but Plaintiff named Officer Howard, Sgt. Carery, Ms. Little, Ms. Hollman, Officer Gonzalez, Warden Davis, Lt. Akin, Officer Anderson, and Sgt. Rodgers who

---

[2] Because Plaintiff is proceeding *in forma pauperis*, he is entitled to have the United States Marshal Service serve his complaint upon the Defendants. See 28 U.S.C. § 1915(c) and Fed. R. Civ. P. 4(c)(2)(B)(i).

are not parties to this action. Id., p. 3-7. The only defendants named are McKinney and Prock.

Plaintiff claims three unknown officers destroyed his legal papers, took his clothing and bedding, and left him with only boxer shorts for three days when it was 40 degrees. Id., p. 3. Howard took Plaintiff to the shower and punched him several times while handcuffed and destroyed his legal papers. Id. Carery refused to provide Plaintiff with lunch from December 9 until December 31, 2022. Id., p. 4. Generally, Plaintiff claims that Little, Hollman, Gonzalez, Prock, and other unknown officers refused to feed him from December 21, 2022, through January 11, 2023. Id., pp. 4-5. McKinney and Prock threatened Plaintiff. Id., p. 5. Gonzalez threw Plaintiff's dinner tray on the floor and said, "enjoy your food child molester, if we don't beat you to death, we'll starve you to death." Id., p. 5.

As relief, Plaintiff seeks a restraining order against "all named persons and employees" of the Florida Department of Corrections (FDOC) and at FSP (including Defendants McKinney, Fowler, Prock, and Manning) to prevent any physical assaults and violence; to keep them from confiscating his legal papers, clothing, and bedding; and to prevent interference with getting three meals per day. Id., pp. 8, 11. Plaintiff also wants a transfer to

another prison and a "special counsel" to conduct regular wellness checks by an attorney. Id., pp. 8-11.

B. Plaintiff's Second Motion for TRO, ECF No. 14

Plaintiff's second motion is strikingly similar to the first. Plaintiff alleges certain events occurred between January 12 and January 18, 2023. ECF No. 14, pp. 3, 5, 7. On January 12, 2023, Prock threatened to give Plaintiff "a taste" of what happens to "child molesters" who "snitch" by filing lawsuits and directed Gonzalez do the same. Id., pp. 3, 5. Gonzalez threatened to "teach [Plaintiff] a less[]on." Id., p. 5. Later, when dinner was served, Prock threw Plaintiff's tray of food on the floor and told him, ". . . eat it off the floor snitch." Id. McKinney came to Plaintiff's cell later in the evening and said, "it's time to pay the piper" and then sprayed Plaintiff in the face with chemical agents that burn and temporar[ily] blind." Id. McKinney then took Plaintiff to another "room off camera." Id. McKinney and Gonzalez each punched Plaintiff in the head one time. Id. When Plaintiff was back in his cell, McKinney threatened that Plaintiff would be "gassed" with chemical agents and beaten weekly "until we kill you or you give up and kill yourself" and said Plaintiff would not eat so long as he was in charge. Id., p. 7.

On January 13, 2023, the warden told Plaintiff that prison officials do not like "child molesters or snitch[e]s . . . you will not leave F.S.P. alive."

Id., p. 7. On January 18, 2023, Gonzalez came to serve dinner and threw Plaintiff's tray on the floor and told him to enjoy his dinner. Id. For four days, Plaintiff refused to eat the food that was thrown on the floor. Alternatively, Plaintiff was given empty food trays. Id. It is important to note that Plaintiff did not allege any injury or irreparable harm requiring medical treatment or that he was denied medical treatment relating to these incidents.

Plaintiff, again, seeks a transfer to another prison chosen by the FDOC. Id., p. 9. Plaintiff wants a temporary restraining order barring Prock and McKinney from any acts of physical violence or retaliation. Id.

### III. Plaintiff's Request for "Special Counsel" is Due to Be DENIED.

As a preliminary matter, Plaintiff's second request for counsel is denied. Upon initiating this case, Plaintiff filed a motion for the appointment of counsel, which was denied. See ECF Nos. 3, 5. The Court previously advised Plaintiff – and it bears repeating -- there is "no constitutional right to counsel" in a civil case. ECF No. 3; see also Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999). According to the *in forma pauperis statute*, "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). However, the statute does not allow the court to require or "appoint" an unwilling attorney to represent an indigent litigant. See Mallard v. U.S. Dist. Court for S. Dist. of Iowa, 490 U.S. 296, 301-02

(1989) (noting Congress used the word "request" in § 1915 not the word "assign" or "appoint").

A litigant requesting counsel must make two threshold showings: (1) that he made a genuine effort to secure counsel himself and (2) that his case presents exceptional circumstances. See Ulmer v. Chancellor, 691 F.2d 209 (5th Cir. 1982); Bass, supra. Those factors include: (1) the type and complexity of the case, (2) whether the indigent is capable of adequately presenting his case, (3) whether the indigent is in a position to adequately investigate the case, and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination. See Ulmer, 691 F.2d at 213 (cited with approval in Smith, supra, Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990), and Neal, supra).

Plaintiff has not made a genuine effort to secure counsel himself and has not demonstrated that exceptional circumstances warrant the appointment of counsel. This is particularly true when no defendant has been served. If circumstances change, Plaintiff may seek further consideration. Accordingly, the second request for counsel is denied without prejudice.

IV.   **Preliminary Injunction Standard**

In order for Plaintiff to be entitled to a preliminary injunction, he must show: (1) a substantial likelihood of success on the merits; (2) that the order is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm that the order would cause to the non-movant; and (4) that the order would not be adverse to the public interest. DeYoung v. Owens, 646 F.3d 1319, 1324 (11th Cir. 2011). A preliminary injunction is considered an extraordinary and drastic remedy and, as such, is not granted unless Plaintiff can clearly satisfy the burden of persuasion as to each of the four prerequisites. Id. Granting or denying a temporary restraining order or preliminary injunction rests in the discretion of the district court. LSSi Data Corp. v. Comcast Phone, LLC, 696 F.3d 1114, 1119 (11th Cir. 2012).

The purpose of preliminary injunctive relief is to preserve the status quo between the parties and to prevent irreparable injury until the merits of the lawsuit can be reviewed. All Care Nursing Service v. Bethesda Memorial Hosp., 887 F.2d 1535, 1537 (11th Cir. 1989). Therefore, the relief sought in the motion must be closely related to the conduct. The persons from whom the injunctive relief is sought must be a party to the underlying action. See In re Infant Formula Antitrust Litig., MDL 878 v. Abbott Laboratories, 72 F.3d 842 (11th Cir. 1995). A showing of irreparable harm is "the sine qua non of

injunctive relief." Northeastern Florida Chapter of Ass'n of Gen. Contractors of Amer. V. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990).

The Court need not address each of the four requirements for injunctive relief. It is sufficient that Plaintiff cannot meet all of them. See United States v. Jefferson Cnty, 720 F.2d 1511, 1519 (11th Cir. 1983).

## V. Discussion

### A. Plaintiff is Not Entitled to Temporary Restraining Orders

Plaintiff essentially seeks a temporary restraining order without notice to the Defendants in this case. Pursuant to Fed. R. Civ. P. 65(b)(1):

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Plaintiff was previously advised that his pleadings must comply with the Local Rules and the Federal Rules of Civil Procedure. See ECF No. 7. These motions do not comply. All documents filed by *pro se* parties "must include a signature block with the party's handwritten signature, typed or

Case No.: 4:22-cv-00412-MW-MAF

printed name, street address, email address if the party has one, and telephone number if the party has one." N.D. Fla. Loc. R. 5.1(E). Plaintiff did not provide the requisite signature block and signed the motions as "respectfully submitted." More importantly, the latest allegations in the motions are unsworn and are not made within an affidavit or amended complaint as required by Fed. R. Civ. P. 65(b)(1)(a). Plaintiff is advised that pleadings that do not comport with the Rules governing the proceedings may be stricken as improper filings.

This Court does not take the allegations in this case lightly. But no Defendant has been served with Plaintiff's complaint; and Plaintiff seeks injunctive relief without notice. Defendants have not been served because Plaintiff has not submitted service copies of his complaint to the Court to effect service on his behalf. Rather, Plaintiff is attempting to proceed in this case via unsworn motions for temporary restraining orders in which he alleges new violations. This is not permissible. Plaintiff's latest allegations are not presented in an affidavit or verified complaint as required by Fed. R. Civ. P. 65(b)(1)(a). Thus, the Court should not issue temporary restraining orders.

The Court also takes note that Plaintiff did not allege that he has exhausted his administrative remedies prior to presenting these latest

allegations. Given the dates, it is unlikely the claims are exhausted. Plaintiff certainly has valid grievances, which he could put forth to the prison and appeal to the FDOC if necessary. Congress implemented an exhaustion requirement to allow correctional officials time and opportunity to address complaints before prisoners present them to federal courts. Porter v. Nussle, 534 U.S. 516, 525 (2002). Exhaustion includes the process of appealing grievances. Allowing inmates to bring unexhausted claims for injunctive relief to federal court bypasses the intent of Congress. Claims that have not been exhausted may not be considered. See Jones v. Bock, 549 U.S. 199, 220 (2007). Exhaustion is mandatory. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016).

None of the claims raised by Plaintiff in the present motions present such a grave emergency that could be said to render the exhaustion requirement futile. Even if Plaintiff's motions complied with the local and federal rules and administrative remedies were exhausted, Plaintiff is not entitled to injunctive relief for the reasons stated below.

B. Plaintiff Cannot Seek Relief against Non-Parties or a Prison Transfer.

The Court cannot issue an injunctive order against every employee in the FDOC, FSP, or other named individuals because they are not parties to the underlying action. See In re Infant Formula Antitrust Litig., MDL 878,

supra. Similarly, this Court should be hesitant to interfere with the administrative processes of a prison. "Granting the injunction would require the federal courts to interfere in the administration of the jail and take over the management or treatment of a single inmate." Brown v. Anglin, 2016 U.S. Dist. LEXIS 158113, 2016 WL 6803133, at *2 (N.D. Fla. June 27, 2016), report and recommendation adopted sub nom. Brown v. Holland, 2016 U.S. Dist. LEXIS 158110, 2016 WL 6780319 (N.D. Fla. Nov. 15, 2016). "[C]ourts are ill-equipped to deal with" the complexities of prison administration. Lawson v. Singletary, 85 F.3d 502 (11th Cir. 1996).

It is well-settled that inmates do not have a constitutional right against being transferred to another institution, have no right to incarceration in a prison of their choice, and are not entitled to any prisoner- or status classification. Smith v. Crews, 738 F. App'x 981, 984 (11th Cir. 2018) citing Meachum v. Fano, 427 U.S. 215, 223-24 (1976); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 (1976). In essence, granting the relief requested by Plaintiff would provide an inmate with the means within which to dictate prison housing assignments. Prison assignments are a function wholly within the discretion of prison authorities. Olim, 461 U.S. at 245.

Case No.: 4:22-cv-00412-MW-MAF

Plaintiff's request for a temporary restraining order against non-parties and his demand for a transfer to another prison should be denied; and, as explained in Section III, Plaintiff's request for visits from a "special counsel" should be denied because he is not entitled to counsel.

C. <u>Temporary Restraining Orders against Defendants Fowler, Prock, McKinney, and Manning are Not Warranted.</u>

Plaintiff maintains prison officials threatened him and refused to feed him in violation of the Eighth Amendment. "A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." <u>Caldwell v. Warden, FCI Talladega</u>, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis and internal quotation marks omitted); <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994). "To prevail on such a claim brought under § 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." <u>Townsend v. Jefferson Cnty.</u>, 601 F.3d 1152, 1158 (11th Cir. 2010).

Plaintiff's allegations of threats by McKinney and Prock fail to state a claim for relief under the Eighth Amendment. ECF No. 13, p. 5. Derogatory, demeaning, profane, threatening, or abusive comments made by an officer

to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation. Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989); see also McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts . . . resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.").

Plaintiff's vague assertions that Prock (and others) "refused to feed [him]" from December 21, 2022, through January 11, 2023, fail to warrant injunctive relief. ECF No. 13, p. 5. There is no factual account of which days- or how many meals Prock denied Plaintiff during that period. A claim alleging the deprivation of food may only rise to the level of a constitutional violation where the prisoner is denied the "minimal civilized measure of life's necessities." Wilson v. Seiter, 501 U.S. 294, 303 (1991). "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977).[3]

Plaintiff seeks a court order to ensure he receives three daily meals. ECF No. 13, p. 8. For two reasons, denial is appropriate. First, Plaintiff has not met his threshold burden because he failed to show he will suffer imminent, irreparable harm if his request is denied. Plaintiff does not provide

---

[3] Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. Prichard, 661 f.2d 1206, 1207 (1981).

Case No.: 4:22-cv-00412-MW-MAF

any details about whether the denial of meals is contributing to any condition that may cause irreparable harm. In fact, Plaintiff fails to allege any physical injury, harm, or conditions that require any medical care.

Second, inmates are not entitled to a specific number of meals each day. Prisons are required to provide meals that contain "sufficient nutritional value to preserve health" but that does not entitle them to three meals per day. See Green v. Ferrell, 801 F.2d 765 (5th Cir. 1986) (setting aside the order of the magistrate judge that directed the jail to provide three meals per day); see also Talib v. Gilley, 138 F.3d 211, 214 n. 3 (5th Cir.1998) (finding it "doubtful" that prisoner missing fifty meals in five months "was denied anything close to a minimal measure of life's necessities . . . [m]issing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period.").

Lastly, a restraining order against Fowler and Manning is unjustified where Plaintiff presents no factual allegations against them.

## VI.    Conclusion and Recommendation.

For the reasons stated above, it is respectfully **RECOMMENDED** that Plaintiff's requests for a temporary restraining order and injunctive relief, ECF No. 13 and 14, be **DENIED.**

Plaintiff's request for the appointment of counsel is **DENIED WITHOUT PREJUDICE**.

Plaintiff is **DIRECTED** to comply with the Court's Order, ECF No. 12, requiring him to provide six (6) service copies so that the complaint can be served on Defendants and addressed on its merits.

IN CHAMBERS at Tallahassee, Florida on January 25, 2023.

s/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).