## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**LEE MITCHELL JOHNSON,**

      **Plaintiff,**

**vs.**                        **Case No. 4:22-cv-00412-MW-MAF**

**LT. MCKINNEY, et al.,**

      **Defendants,**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Lee Mitchell Johnson, an inmate proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 10. The complaint was served upon Defendants. ECF Nos. 34, 35, 36, 47, 55. Defendants filed a motion to dismiss. ECF No. 64. Johnson filed a response. ECF No. 73. After careful review, Defendants' motion to dismiss should be granted; and the case should be dismissed for failure to exhaust as required by the Prison Litigation Reform Act ("PLRA").

**I.    Johnson's Amended Complaint, ECF No. 10.**

Johnson sued six Florida State Prison (FSP) correctional officers: Sgt. Prock, Lt. McKinney, Sgt. Tyre, Sgt. Atterberry, Sgt. Fowler, and Officer Manning, in their individual capacities. ECF No. 10, pp. 1-3, 5. Johnson alleged a campaign of abuse and retaliation designed to punish him for filing

lawsuits and grievances. <u>See generally</u>, ECF No. 10. Johnson described a series of incidents that occurred over three weeks in September 2022. <u>Id.</u>

Johnson alleged the abuse began on September 6, 2022, when he arrived at FSP. <u>Id.</u>, p. 6. Prock and Atterberry met Johnson, called him a "child molester that likes to write grievances and file lawsuits," and promised to "cure [him] of that." <u>Id.</u> According to Johnson, Prock and Atterberry took him to a cell and beat him while he was handcuffed and in leg irons. <u>Id.</u> Prock threatened, "[D]rop the lawsuit and no more grievances or we'll kill you." <u>Id.</u> Johnson suffered a bloody nose, bruising, black eyes, blurry vision, pain in the side of his ribs, swelling on the side of his head, and headaches. <u>Id.</u> Johnson requested medical treatment, but Prock said, "No, go lay down." <u>Id.</u>

Johnson alleged the physical attacks resumed on September 15, when Tyre came to his cell. <u>Id.</u>, p. 8. Tyre handcuffed Johnson through the access port and, upon entering, put Johnson in a chokehold until he passed out. <u>Id.</u> Tyre threatened to kill Johnson unless he dropped the lawsuit. <u>Id.</u> Similarly, on September 21, Fowler went to the cell, handcuffed Johnson, "slammed" him into the wall, choked him, and threatened to kill him unless he dropped the lawsuit. <u>Id.</u>, p. 9. Fowler refused Johnson's request for medical attention. <u>Id.</u> Four days later, McKinney went to Johnson's cell and warned he would "kill" Johnson during "snitch week" unless he dropped the lawsuit. <u>Id.</u>

On September 28, McKinney went to the cell, handcuffed Johnson, beat him, and threatened to kill him. Id., p. 10. Johnson suffered injuries, but McKinney refused to get Johnson medical treatment. Id. On September 29, Prock transferred Johnson to another cell, punched and kicked him, and threatened to kill him unless he "stop[ped] writing grievances." Id.

Allegedly, Defendants also denied Johnson his meals. Id., p. 7. From September 9 through September 26, Fowler refused to bring breakfast and directed Manning to do the same. Id. Manning followed Fowler's directive. Id. On several occasions, Fowler threatened to withhold food unless Johnson dropped the lawsuits and stopped writing grievances. Id. Tyre refused Johnson lunch and dinner, offered empty food trays and stated, "I don't feed snitch[e]s and writ writers so your (sic) gonna starve." Johnson. Id., p. 8. Without specificity, Johnson alleges the pattern continues. Id., pp. 7-8.

Johnson contends he suffered weight loss, stomach pain, headaches, dizziness, weakness, mental distress, panic attacks, neck pain, ringing in the ears, and right elbow pain. Id., pp. 11-12. He seeks $50,000 in compensatory damages against McKinney, Prock, Tyre, Atterberry, and Fowler; and punitive damages against all defendants. Id., p. 15.

## II.   Standard of Review

"A pleading that states a claim for relief must contain . . . a short and

plain statement of the claim showing that the pleader is entitled to relief."
Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the "complaint must
contain sufficient factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).
Although legal conclusions can provide the framework of the complaint, they
must be supported by factual allegations. Id. at 679. Detailed factual
allegations are not required, but the complaint must offer more than "labels
and conclusions" or "a formulaic recitation of the elements of the cause of
action." Twombly, 550 U.S. at 555 (citation omitted). The factual allegations
must adequately "raise a right to relief above the speculative level." Id.
(citations omitted). "The mere possibility the defendant acted unlawfully is
insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578
F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other
grounds by* Mohamad v. Palestinian Auth., 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the
complaint in the light most favorable to the plaintiff and take the factual

allegations therein as true. <u>See</u> <u>Brooks v. Blue Cross & Blue Shield of Fla.,</u> <u>Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing <u>SEC v. ESM Grp., Inc.</u>, 835 F.2d 270, 272 (11th Cir. 1988)).

The PLRA requires a prisoner to exhaust his administrative remedies before filing a civil rights action. 42 U.S.C. § 1997(e); <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002); <u>Gould v. Owens</u>, 383 F. App'x 863 (11th Cir. 2010). There is no discretion to waive this requirement. <u>Id</u>. The PLRA requires proper exhaustion in compliance with the procedural rules and deadlines of an institution's grievance system. <u>Woodford v. Ngo</u>, 548 U.S. 81, 89-91 (2006). The exhaustion requirement "reduces the quantity and improve[s] the quality of prisoner suits" and affords prison officials the opportunity to address complaints internally before a Section 1983 case is filed. <u>Porter</u>, 534 U.S. at 525. This includes filling an appeal, even if it would be futile. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." <u>Id</u>. It is "not generally an adjudication on the merits." <u>Id</u>.

Ruling on a "motion to dismiss for failure to exhaust administrative

remedies is a two-step process." <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008) (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." <u>Id</u>. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." <u>Id</u>. (citing to <u>Bryant</u>, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." <u>Turner</u>, 541 F.3d at 1082 (citing <u>Bryant</u>, 530 F.3d at 1373-74, 1376). The burden of proof for evaluating an exhaustion defense rests with the Defendant. <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); <u>Turner</u>, 541 F.3d at 1082-83. A remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Id.</u> at 1860.

III.   **Defendants' Motion to Dismiss, ECF No. 64.**

Defendants argue dismissal is proper for several reasons: Johnson suffered only *de minimis* injuries, so, punitive damages are barred; and Johnson failed to exhaust his administrative remedies as required by the PLRA. ECF No. 64. Defendants maintain Johnson did not file any related grievances before filing this lawsuit on November 14, 2022. Id., pp. 13-15. Johnson submitted numerous grievances between September and November 14 (eighteen in total), but they were unrelated, untimely, or otherwise failed to follow the grievance procedure. Id., pp. 15-16.

Defendants deny that any prison official refused to provide grievance forms or interfered with Johnson's ability to file them, as evident by the number of grievances Johnson filed on other issues. Id., pp. 16-18. The process for submitting grievances is "closed." Only the inmate, grievance coordinator, and warden have access to the grievances; therefore, Defendants had no access. Id., p. 19. Inmates place grievances in a box through the flap in the door when the box is brought to the cell. Id. Only the grievance coordinator and warden can open the box. Id.

Defendants contend Johnson did not prove he properly exhausted, but that is of no consequence, Id., p. 26; he is not required to plead or prove exhaustion. Jones, 549 U.S. at 216 (2007). That is Defendants' burden.

## IV.   Johnson's Allegations of Interference in the Exhaustion Process

Johnson admitted in his initial complaint that he filed late grievances because staff refused to provide the forms. ECF No. 1, p. 17.[1] Johnson's amended complaint, which is silent on the matter of exhaustion supersedes his original complaint. See Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1345 n.1 (11th Cir. 1999). The facts Johnson raised in his amended complaint are entitled to the presumption of truth. See Brooks, 116 F.3d at 1369.

In his response to the motion to dismiss, Johnson detailed challenges in prosecuting this case (no access to the law library, legal documents, case law, law books, or copier). ECF No. 73, p. 2. Johnson claims the evidence shows he made every attempt to exhaust multiple times but was intimidated from doing so. Id., p. 3. Johnson alleges officials only responded to grievances that did not allege staff abuse. Id. Johnson argues exhaustion was complete when prison officials fail to respond to inmate grievances and cites Haight v. Thompson, 763 F.3d 554, 561 (6th Cir. 2014) and Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 150-54 (3d Cir. 2016). Id.

---

[1]Johnson's initial complaint was filed on November 14, 2022. ECF No. 1. "Under the prison mailbox rule, a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); see also Fed. R. App. 4(c)(1).

Johnson admits his grievances were untimely, but this was due to the staff abuse and because he was in fear for his life. Id., p. 4. He claims he mustered "the courage" to file grievances on November 17, 2022, just three days after initiating this case. Id. The proof according to Johnson is he "did not file a single grievance while housed under defendants' direct supervision." Id. Johnson would only file other grievances. Id. Johnson also claims that because the issues concerned matters of "reprisal," he could skip the informal grievance level and begin the process at the formal level under Fla. Admin. Code § 33-103.006(3)(c). Id., p. 5.

The complaint form advises prisoners they are required "to exhaust all available administrative remedies before bringing a case" and the failure to do so may result in dismissal. Id., p. 16. Exhaustion is mandatory. Porter, 534 U.S. at 532. A prisoner's failure to exhaust requires dismissal. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2005). Before addressing the merits, the question before the Court is whether Johnson exhausted his administrative remedies **before November 14, 2022**, not afterward. First, the Court outlines the prison grievance procedure.

## V.    Discussion

### A. Florida Department of Corrections' (FDOC) Grievance Procedures

The FDOC provides a three-step grievance procedure: "(1) file an

informal grievance with a designated prison staff member (form DC6-236); (2) file a formal grievance with the institution's warden (form DC1-303); and then (3) submit an appeal to the Secretary of the FDOC" (using a second form DC1-303). Chandler, 379 F.3d at 1288; Fla. Admin. Code § 33-103.005-103.007. Informal grievances must be received by the designated prison official within **twenty** calendar days of the incident date. Fla. Admin. Code § 33-103.011(1)(a). To appeal the denial of an informal grievance, the prisoner must file a formal grievance within **fifteen** calendar days and attach the contested informal grievance. Id., §§ 33-103.006(1)(a) & (g) and 33-103.011(1)(b)(1). To appeal the denial of a *formal* grievance (whether filed as the initial grievance or as the appeal of an informal grievance), the inmate must, within **fifteen** calendar days of receiving the denial, file a grievance appeal to the Secretary and attach the contested grievances. Id., §§ 33-103.007(1) & (5) and 33-103.011(1)(c). Failure to attach the forms will result in the return of a grievance without processing. Id. Extensions "shall be granted when" an inmate clearly demonstrates "it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner." Id., § 33-103.11(2).

The reviewing authority has fifteen calendar days to respond to an inmate's informal grievance, twenty calendar days to respond to an inmate's

formal grievance, and thirty calendar days to respond to an inmate's appeal. Id., §§ 33-103.011(3)(a) - (c).

For certain emergencies, inmates are permitted to skip step one and file a formal grievance directly with the warden's office or with the FDOC Secretary; this includes grievances of reprisal. Id., § 33-103.006(3)(c). Formal grievances must be filed "no later than 15 calendar days from . . . the date on which the incident or action being grieved occurred if an informal grievance was not filed . . ." Id., § 33.103.011(1)(b)(2).  Inmates must comply with the grievance procedure to satisfy the exhaustion requirement. Untimely and procedurally defective grievances do not satisfy the PLRA's exhaustion requirement. Woodford, 548 U.S. at 90-96; Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005); Bryant, 530 F.3d at 1378-79.

*1. Grievances Filed Between September 6 and November 14, 2022.*

Ordinarily, Johnson had twenty days to file informal grievances about the alleged abuses. Fla. Admin. Code § 33-103.011(1)(a). Based on the dates of the alleged incidents, respectively, those deadlines fell between September 26 and October 19, 2022. Defendants submitted the sworn statements of Cassandra Smith, an assistant administrator for the Florida Department of Corrections (FDOC), and Lawanda Sanders, an FDOC operation analyst. ECF No. 64-1, pp. 1-2, 10-11. Both Smith and Sanders

verified they reviewed the respective logs and found that none of Johnson's informal- or formal grievances or appeals filed between September 6 and November 14, 2022, were related to Defendants or the claims in this case. Id., pp. 1-2, 10.[2]

On September 7, 2022, while housed at Wakulla C.I., Johnson filed Formal Grievance Nos. 2209-118-018 and 2209-118-119, relating to PREA[3] allegations. Id., pp. 4-5, 21-22. On the same date, September 7, 2022, Johnson filed an appeal concerning a "gaintime award."[4] Id., pp. 12.

Johnson filed twelve informal grievances between September 26 and November 10, 2022, which is significant because it encompasses the period of the alleged abuse and Johnson's informal grievance deadlines. Id., pp. 3, 6-9, 19. Johnson filed grievances to "sign off" protective management status on September 26th and 28th. Id., pp. 3, 19. On October 3, Johnson filed a grievance about getting his legal mail. Id. On October 17, Johnson filed a

---

[2] Sanders' statement appears to contain a scrivener's error. ECF No. 64-1, p. 11. Paragraph 5 states that the procedures were followed for the "grievances filed by Inmate Cummings, DC #303027." Id. The remainder relates to Johnson. Id., p. 10.

[3] Referring to The Prison Rape Elimination Act, 42 U.S.C. § 15601, et seq., established to develop national standards for the prevention and punishment of prison rape.

[4] If Johnson was housed at Wakulla C.I. on September 7, 2022, this seemingly would contradict his allegation that any attack occurred at FSP on September 6, 2022. But because Johnson failed to exhaust his administrative remedies, the Court will not reach the merits of Johnson's claims.

grievance asking for a tablet and, again, sought to "get off" protected management status. Id. On October 28, Johnson filed a grievance for not receiving library books. Id. Clearly, Johnson had access to step one before initiating this case but did not file any informal grievances against the Defendants. Thus, Johnson failed to exhaust his administrative remedies at this stage. Johnson argues he did not file informal grievances because he chose to "skip" to step two. ECF No. 73, p. 5.

Given that the allegations implicated "grievance reprisals," Johnson, indeed, could initiate the grievance process at step two by filing a formal grievance. See Fla. Admin. Code § 33-103.006(3)(c). The time frame within which to file a formal grievance is shorter than an informal one – Johnson had fifteen days from the date of the incidents being grieved. See Fla. Admin Code § 33-103.011(1)(b)(2). Therefore, formal grievances should have been filed between September 21, 2022, and October 14, 2022. None were filed in September.

During October and November, Johnson filed three formal grievances addressing medical- and dietary concerns; access to legal mail, email, a tablet, and library books; and denied access to the kiosk by Lieutenant Wendorff. Id., pp. 3, 6-8. None relate to the claims in the present case. Clearly, Johnson had access to the formal grievance process before initiating

this case. This begs the question – if Johnson had access to the forms to address this myriad of issues, he could have filed grievances about the alleged abuse during the same period.

    2. *Grievances Filed November 14, 2022, through January 3, 2023.*

Johnson did not file any informal grievances between November 10 and November 28, 2022, either; however, between November 29 and January 3, 2023, Johnson filed sixteen grievances. ECF No. 64-1, pp. 19-20. One seems relevant. The log shows that, on November 29, Johnson filed Grievance No. 205-2211-0659 alleging staff made death threats but, since neither party provided an actual copy of the grievance form, there is no way of knowing whether this corresponds to any of the incidents involved in the instant case. Id., p. 19. None alleged the denial of food or physical assaults. Thus, Johnson did not complete step one during this time.

Again, giving Johnson the option to skip to step two, Johnson filed eight appeals from December 27 through December 29, 2022, declaring that on November 17 he filed "DC1-303" forms (formal grievances) "at the institutional level" concerning the relevant physical assaults and threats; FDOC returned seven appeals to Johnson and denied one. Id., pp. 27-29, 31, 33, 35, 37, 39, 41, 43. The appeals filed on December 27, were nearly

identical to one another.[5] Id., 27-29. In Appeal No. 23-6-00569, Johnson stated there was no response to his November 17 grievance reporting the incident where Tyre handcuffed him and put him in a chokehold on September 15. Id., p. 29. In Appeal No. 23-6-571, Johnson alleged there was no response to his November 17 grievance reporting Fowler's refusal to feed him. Id., p. 35. In Appeal No. 23-6-572, Johnson alleged there was no response to his November 17 grievance reporting Tyre's refusal to feed him. Id., p. 31. FDOC returned these appeals without action because Johnson never filed a formal grievance after November 17. Id., pp. 30, 32, 36.

Johnson filed more appeals on December 28 and December 29. Id., pp. 27-28, 41. Following the same pattern, Johnson alleged there was no response to his November 17 formal grievances about the abuse as follows:

1. Appeal No. 23-6-570 – Fowler's assault on September 21. Id., p. 33.

2. Appeal No. 23-6-573 – McKinney's threat on September 25. Id., p. 37.

3. Appeal No. 23-6-574 - McKinney's assault on September 28. Id., p. 39.

4. Appeal No. 23-6-802 – Prock's assault on September 29. Id., p. 41.

5. Appeal No. 23-6-01110 - the September 6th attack by

---

[5] Johnson provided duplicates of Defendants' exhibits to support his response. Accordingly, the Report uses the citation for the exhibits submitted by Defendants.

Atterberry and Prock and their refusal to get Johnson medical assistance. Id., p. 43.

The FDOC returned the first four appeals without action because Johnson did not file a formal grievance or did not attach a copy of the grievances. Id., pp. 34, 38, 40, and 42. The FDOC denied Appeal No. 23-6-01110 because, after an investigation, the Office of Inspector General determined "there was no evidence to support [the] allegations." Id., p. 44.

### 3. Exhaustion Analysis

Johnson believes he is excused from the exhaustion requirement because Defendants' abuse and threats hindered his ability to file formal grievances within fifteen days and because the prison's responses to his grievances were untimely or were otherwise nonresponsive. ECF No. 73, pp. 3-4. But first things first. The hurdle for Johnson, is that he must show he exhausted his administrative remedies **before** November 14, 2022, when he brought forth the instant case.

Johnson did not file any grievances or appeals against Manning; therefore, all claims against Manning are easily dismissed as unexhausted. If Johnson could file grievances against all the other defendants – timely or untimely -- he could have done so against Manning.

The first step of review under Turner requires the Court to accept as true Johnson's allegation that the grievance process was unavailable

because prison officials intimidated him and did not respond to his grievances. ECF No. 73. This is problematic for Johnson on two fronts. First, by his own admission in his Response and acknowledgment in his appeals, at no time before initiating this case on November 14, 2022, did Johnson complete step one or step two. Accepting Johnson's allegation that he finally mustered the "courage" to file formal grievances on November 17, past the fifteen-day deadline, still, will not win the day for him.

Even if that were true, any appeal of a formal grievance must be filed within fifteen days of receiving a denial. See Fla. Admin. Code §§ 33-103.007(1) & (5) and 33-103.011(1)(c). If Johnson filed any formal grievance on November 17, the prison had until December 7, 2022, to respond. Johnson argues the prison did not respond. If true, Johnson had fifteen days, until December 22, to file an appeal; but he did not file any appeal until December 27, December 28, and December 29, which is untimely. Johnson does not allege that anyone interfered with him filing his appeals. Still, the grievance process provides an opportunity for inmates to request an extension of time to file a grievance, but Johnson did not do so. Untimely grievances will not satisfy the exhaustion requirement. Woodford, 548 U.S. at 92-103; see also Bryant, 530 F.3d at 1378-79.

Johnson claims the record proves the threats interfered with his

grievance process because he "did not file a single grievance while housed under their direct supervision." Id., p. 4. The record contradicts that claim. Johnson argued he did not have the courage to file any grievances until November 17, 2022. Id. But, again, the record stands in contrast. Johnson filed dozens of grievances during the period of the alleged abuse and in the subsequent months; he had access to grievance forms for the entire period.

If the Court assumed Johnson's allegations suggest some component of the grievance process was not available to him, and because "[a] prisoner need not exhaust remedies if they are not 'available," dismissal would not be appropriate at Turner's first step. See Ross v. Blake, 578 U.S. 632, 635 (2016). A remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

However, dismissal is appropriate at Turner's second step. Johnson's real problem is the timing of this lawsuit. "While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to Turner, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020). Johnson believes he exhausted his

administrative remedies twice "at the institutional level on November 17 and December 26," but these were filed *after* initiating this case. ECF No. 73, p. 6. Exhaustion must precede litigation. "The exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile." Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). In other words, a prisoner cannot initiate a case and then attempt to exhaust once the suit begins. This subverts the purpose of the PLRA. See Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2007) (affirming *sua sponte* dismissal of an inmate's action where it was "undisputed" that the plaintiff filed his action before receiving a response to his grievance appeal); Chambers v. Sood, 956 F.3d 979, 981 (7th Cir. 2020) (pursuing administrative remedies while litigation is underway does not suffice). This is the catch here: Johnson attempted to exhaust three days after filing this lawsuit.

Johnson's contention that he was denied access to grievance forms and the courts is simply not credible. Johnson filed dozens of informal grievances, but *none* related to the issues in this case; and he filed related formal grievances and appeals only *after* initiating this case. Johnson's history of filing grievances is evidence that prison officials did not make administrative remedies unavailable to him or lose or destroy his grievances,

despite his allegations. See Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018).

Finally, the Court takes judicial notice of the fact that Johnson is a prolific filer and knows the exhaustion requirement well.[6] Under Fed. R. Evid. 201(b), the Court may take notice of any "fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Because exhaustion "is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376.

Any claim that Johnson was blocked from accessing the grievance

---

[6] Over the past three years, Johnson pursued at least a dozen federal cases challenging the conditions of his confinement: S.D. Fla. No. 9:20-cv-81032-DMM, Johnson v. Lindor (filed Jun. 28, 2020); S.D. Fla. No. 9:20-cv-81961-MGC, Johnson v. Alfred, et al. (filed Oct. 18, 2020); S.D. Fla. No. 9:20-cv-81963-KMW, Johnson v. Ferguson, et al. (filed Oct. 18, 2020); S.D. Fla. No. 9:21-cv-80517-BB, Johnson v. Castillo, et al. (filed Feb. 27, 2021); S.D. Fla. No. 9:20-cv-80709-RAR, Johnson v. Williams, et al. (filed Apr. 10, 2020); S.D. Fla. No. 9:21-cv-80985-AMC, Johnson v. Humphries, et al. (filed May 24, 2021); S.D. Fla. No. 9:21-cv-81275-KMW, Johnson v. Gordon (filed Jun. 12, 2021); S.D. Fla. No. 9:21-cv-81198-RLR, Johnson v. McKay (filed Jun. 28, 2021); S.D. Fla. No. 9:22-cv-80881-WPD, Johnson v. Walker, et al. (filed Jun. 9, 2022); M.D. Fla. No. 3:22-cv-702-PDB, Johnson v. Garner, et al. (filed Jun. 22, 2022); N.D. Fla. No. 4:22-cv-306-MW-MJF, Johnson v. Perry, et al. (filed Aug. 16, 2022).

process or the courts is belied by the fact that Johnson initiated this lawsuit while he litigated three other federal cases in three different districts. <u>See</u> N.D. Fla. No. 4:22-cv-00306-MW-MJF, <u>Johnson v. Perry, et al.</u>; M.D. Fla. No. 3:22-cv-00702-BJD-PDB, <u>Johnson v. Garner, et al.</u>; and S.D. Fla. No. 9:22-cv-80881-WPD, <u>Johnson v. Walker</u>. In all three cases, during October 2022, Johnson filed notices, responses to court orders, and motions. <u>Id.</u>

Johnson's motion for injunctive relief in the Middle District of Florida (MDFL) case is most relevant because the allegations within it are identical to those raised here, that is, in retaliation for filing lawsuits, McKinney, Prock, Fowler, Tyre, Patterson, Atterberry, Knowles, and Manning, threatened Johnson, beat him, and withheld food.[7] <u>See</u> M.D. Fla. No. 3:22-cv-00702-BJD-PDB, D.E. 14, pp. 2-5.[8] In that motion, dated October 24, 2022, Johnson stated that he filed grievances about these incidents, but the prison did not respond. <u>Id.</u> Of course, as explained above, Johnson never filed grievances about these alleged incidents until November 17. So, Johnson told the Middle District of Florida one thing and this Court another.

---

[7] These individuals were not original parties to the MDFL case; therefore, Johnson would not be entitled to injunctive relief. M.D. Fla. No. 3:22-cv-00702-BJD-PDB, D.E. No. 16.

Except for Knowles, Johnson listed these defendants when he initiated the instant case. <u>See</u> ECF No. 1. Johnson's amended complaint names six of these defendants.

[8] The citation "D.E." is used to cite to docketed entries in other federal cases to distinguish those cases from the instant case.

On October 28, 2022, the MDFL denied Johnson's motion because the defendants were not parties to that case. Id., D.E. 16. Seventeen days later, Johnson initiated the instant case raising the same allegations. ECF No. 1. Johnson cannot have it both ways – either he started and exhausted the prison grievance process **before** filling this lawsuit, or he did not. This Court should find that Johnson did not exhaust.

 Johnson never started the exhaustion process *before* coming to this Court. See Woodford, 548 U.S. at 93. From an objective and subjective point of view, Johnson's ability to file dozens of grievances concerning a myriad of issues and to litigate three other federal cases between September 7 and November 14, 2022, flies in the face of his allegations. Johnson simply did not pursue the grievance process in the proper order within the required time frame and through no fault of Defendants. Inmates have no discretion about how to exhaust; they must do so in the manner specifically prescribed by the agency's procedures. Id. at 90-91. Johnson's allegations are internally inconsistent and refuted by the record. Factual allegations that are inconsistent need not be accepted when determining the exhaustion issue.

### 4. *Compensatory and Punitive Damage Claims*

Defendants also argue the claims for compensatory damages must be dismissed because Johnson did not suffer greater than *de minimis* injuries

and his request for punitive damages should be dismissed because they are never necessary to correct a constitutional right. However, the Court need not reach the merits of any claims due to lack of exhaustion.

     *5. Johnson's Motion for Emergency Preliminary Injunction.*

     The Court deferred ruling on Plaintiff's motion for emergency preliminary injunction pending resolution of Defendant's motion to dismiss. ECF No. 70. In his motion, Johnson claims that on June 9, 2023, Atterberry threw his legal files in the trash, physically assaulted him, and refused his request for medical attention. ECF No. 68, pp. 2-3. Johnson also claims prison staff refused to provide him with grievance forms. Id., p. 3. As relief, Plaintiff seeks the return of his legal property, law books, law journals, dictionary, Bible, and writing materials. Id., p. 4.

     First, the prison grievance procedure does not create a protected liberty interest; there is no federal constitutional right to an administrative-grievance procedure (i.e. grievance forms). Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011). Second, a claim concerning the loss of property is not cognizable under Section 1983 "if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Prisoners may file a tort claim action in state court to recover damages for lost property. See Fla. Stat. 768.28. Finally, given the

recommendation set forth in this Report, the dismissal of this case moots Plaintiff's request for injunctive relief.

## VI.   Conclusion and Recommendation

It is respectfully recommended that Defendants' Motion to Dismiss, ECF No. 64, be **GRANTED** for failure to exhaust administrative remedies pursuant to 28 U.S.C. 1997(e). Johnson's pending motion for injunctive relief, ECF No. 68, should be denied as moot. It is also recommended that the claims against Defendants be **DISMISSED** and the case be **CLOSED**.

IN CHAMBERS at Tallahassee, Florida, on December 5, 2023.

**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).