## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**LEE MITCHELL JOHNSON,**

      **Plaintiff,**

**vs.**                  **Case No. 4:22-cv-00412-MW-MAF**

**LT. MCKINNEY, ET AL.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Lee Mitchell Johnson, an inmate proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 10. This Cause comes before the Court upon Defendants' Motion to Dismiss and Johnson's Response. ECF Nos. 64 and 73. The undersigned held an evidentiary hearing on February 5, 2024, to resolve factual disputes related to the matter of exhaustion. ECF No. 92. After careful consideration of the record and testimony during the evidentiary hearing, the undersigned recommends that the motion to dismiss should be granted. A brief discussion of the procedural history is warranted.

## I.   Procedural History

Johnson filed a complaint alleging Defendants participated in a campaign of abuse in violation of his constitutional rights. ECF No. 10.

Defendants filed a motion to dismiss asserting, *inter alia*, Johnson failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). ECF No. 64. Johnson alleged Defendants interfered with his ability to exhaust. ECF No. 73.

The undersigned issued a Report recommending dismissal in favor of Defendants because Johnson failed to exhaust.[1] ECF No. 77. In response, Johnson filed objections repeating his allegations that because he feared for his life, he could not properly exhaust. ECF No. 79. The district judge reviewed the Report and Johnson's objections and observed that Johnson minimized the fact he filed numerous, unrelated grievances during the period in which he could have filed grievances about the alleged abuse. ECF No. 80. Johnson maintained he filed unrelated grievances to "test[] the waters." Id. Ultimately, the district judge rejected the Report and remanded the case for the undersigned "to conduct an evidentiary hearing to determine whether the alleged threats of retaliation against" Johnson "made the administrative process 'unavailable' to him during the relevant time period." Id., p. 2.

"[A] judge may make factual findings about subject matter jurisdiction

---

[1] The undersigned did not reach the merits of Defendant's other assertions because exhaustion is required. The merits of any claims may not be addressed if a prisoner-plaintiff fails to exhaust.

on a Rule 12(b)(1) motion to dismiss." <u>Bryant v. Rich</u>, 530 F.3d 1368, 1376 (11th Cir. 2008). The Court may consider facts outside of the pleadings to resolve factual disputes so long as the factual disputes do not decide the merits and the parties are given sufficient opportunity to develop a record. <u>See</u> <u>Tillery v. U.S. Dep't of Homeland Sec.</u>, 402 F. App'x 421, 423-24 (11th Cir. 2010) (per curiam) (citing <u>Bryant</u>, 530 F.3d at 1376). Additionally, the Court may make credibility determinations in resolving any factual dispute related to exhaustion. <u>See</u> <u>Bryant</u>, 530 F.3d at 1377-78 (finding that the district court did not clearly err in determining that plaintiff's allegation that he was denied access to a grievance form was not credible); <u>see</u> <u>also</u> <u>Black v. Rayburn</u>, 2024 U.S. App. LEXIS 260, *3 (11th Cir. 2024) (citing <u>Id.</u>).

At the evidentiary hearing, Johnson testified on his own behalf. Defendants also testified and brought forth other witnesses to outline the prison grievance procedure and to confirm, that, although Johnson filed numerous grievances about unrelated issues, he did not exhaust the claims against Defendants during the relevant period. Given Johnson's testimony at the evidentiary hearing, regarding the lack of medical care he received during the above period and alleged late night visits from correctional officers, the Court ordered Defendants to provide copies of Johnson's medical records and videos of Johnson's cell area for the relevant period

(September through December 2022. ECF Nos. 92, 93. Defendants provided the records and videos[2], along with supplemental authorities. ECF Nos. 94, 95. Thus, the motion to dismiss -- and the matter of exhaustion -- is ripe for review.

## II.   Standard of Review

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Although legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. Id. at 679. Detailed factual

---

[2] In their "Notice of Compliance," Defendants provided the only video they were able to obtain, recordings from September 7, 2022. ECF Nos. 94 and 94-1, Exh. B. According to Defendants, the Inspector General's office has additional video of Johnson but would not release it "due to ongoing investigations." ECF No. 94, p. 1. At least one investigation is apparently related to "criminal charges for making a false report, knowingly providing false information, and perjury in an unofficial proceeding" in Bradford County. No criminal court records are available; thus, there is no effect on the outcome here.

allegations are not required, but the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." Twombly, 550 U.S. at 555 (citation omitted). The factual allegations must adequately "raise a right to relief above the speculative level." Id. (citations omitted). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by* Mohamad v. Palestinian Auth., 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (citing SEC v. ESM Grp., Inc., 835 F.2d 270, 272 (11th Cir. 1988)).

The PLRA requires a prisoner to exhaust his administrative remedies before filing a civil rights action. 42 U.S.C. § 1997(e); Porter v. Nussle, 534 U.S. 516, 524 (2002); Gould v. Owens, 383 F. App'x 863 (11th Cir. 2010). There is no discretion to waive this requirement. Id. The PLRA requires proper exhaustion in compliance with the procedural rules and deadlines of an institution's grievance system. Woodford v. Ngo, 548 U.S. 81, 89-91 (2006). The exhaustion requirement "reduces the quantity and improve[s] the

quality of prisoner suits" and affords prison officials the opportunity to address complaints internally before a Section 1983 case is filed. <u>Porter</u>, 534 U.S. at 525. This includes filling an appeal, even if it would be futile. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." <u>Bryant</u>, 530 F.3d at 1374. Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." <u>Id</u>. It is "not generally an adjudication on the merits." <u>Id</u>.

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008) (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." <u>Id</u>. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." <u>Id</u>. (citing to <u>Bryant</u>, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related

to exhaustion." <u>Turner</u>, 541 F.3d at 1082 (citing <u>Bryant</u>, 530 F.3d at 1373-74). The burden of proof for evaluating an exhaustion defense rests with the Defendant. <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); <u>Turner</u>, 541 F.3d at 1082-83. A remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Id.</u> at 1860. Johnson has the burden of proof as to any alleged interference with the grievance process.

### III.   Johnson's Complaint, ECF No. 10.[3]

Johnson alleged that, from September 2 through September 29, 2022, Defendants, correctional officers at Florida State Prison (FSP), orchestrated an ongoing campaign of abuse against him for filing prior lawsuits against prison officials and because he is a convicted sex offender. ECF No. 10. Johnson alleged physical abuse and the denial of medical treatment and food. <u>Id.</u>

According to Johnson, upon his arrival at FSP on September 6, Prock

---

[3] Although Johnson's complaint was summarized in the earlier Report, ECF No. 77, it is restated here.

and Atterberry called him a "child molester who likes writing grievances and filing lawsuits"; they told Johnson they would "cure" him. Id., p. 6. Prock and Atterberry took Johnson to a cell and beat him while he was handcuffed and in leg irons. Id. Johnson suffered a bloody nose, bruising, black eyes, blurry vision, pain in his ribs, swelling on the side of his head, and headaches. Id. Johnson's requested medical care, but Prock said, "No, go lay down." Id.

Allegedly, the physical abuse resumed on September 15, when Tyre handcuffed Johnson behind his back and held him in a chokehold from behind until Johnson passed out. Id., p. 8. Tyre threatened to kill Johnson unless he dropped the prior lawsuits. Id. On September 21, Fowler appeared at Johnson's cell, handcuffed him, "slammed" him against the wall, choked him, and made similar threats. Id. Fowler refused Johnson's request for medical care. Id. Four days later, on September 25, McKinney went to Johnson's cell and threatened to "kill" Johnson during "snitch week" unless he dropped the prior lawsuits. Id. On September 28, McKinney went to Johnson's cell, handcuffed Johnson behind his back, beat him with the chain attached to leg irons, and threatened to kill him. Id., p. 10. Johnson suffered multiple cuts, welts, and bruises; McKinney denied Johnson medical care. Id. The next day, Prock beat Johnson causing him to suffer a black eye, blurry vision, headaches, back- and neck pain, and a bloody nose. Id., pp. 10-11.

Prock moved Johnson to another cell, punched and kicked him, and threatened to kill him unless he "stop[ped] writing grievances." Id.

Allegedly, Defendants also threatened to starve Johnson by denying him meals unless he dropped the prior lawsuits. Id., p. 7. From September 9 through September 26, Fowler refused to bring breakfast and directed Manning to do the same. Id. Manning followed Fowler's directive. Id. On several occasions, Fowler threatened to withhold food unless Johnson dropped the lawsuits and stopped writing grievances. Id. Tyre refused Johnson lunch and dinner, offered empty food trays, and stated, "I don't feed snitch[e]s and writ writers so you (sic) gonna starve." Id., p. 8. Without specificity, Johnson alleges the pattern continues. Id., pp. 7-8.

Johnson contends he suffered weight loss, stomach pain, headaches, dizziness, weakness, mental distress panic attacks, neck pain, ringing in the ears, and right elbow pain. Id., pp. 11-12. He seeks $50,000 in compensatory damages against McKinney, Prock, Tyre, Atterberry, and Fowler; and punitive damages against all defendants. Id., p. 15.

## IV.   Defendants' Motion to Dismiss, ECF No. 64.

Defendants present two main grounds for dismissal. ECF No. 64. First, Johnson failed to exhaust his administrative remedies; and, second, punitive damages are barred because Johnson suffered only *de minimis* injuries. Id.

Johnson did not file any related grievances before initiating this lawsuit but submitted numerous other grievances between September and November 14 (eighteen, in total), all of which were unrelated, untimely, or otherwise failed to follow the grievance process. Id., p. 15. Defendants deny that they interfered in any way with Johnson's ability to file grievances; and the sheer volume of Johnson's grievances is evidence that the process was accessible. Id., pp. 16-18. Defendants also maintain that the grievance process is closed. A locked box is brought to an inmate's cell for him to place his grievance inside, but only the grievance coordinator and the warden can access the grievances. Id., p. 19. In short, Defendants had no access to any grievance Johnson would have filed.

If Johnson failed to exhaust, the inquiry -- and the case -- ends because the PLRA deprives this Court of jurisdiction.

## V.   Johnson's Response Alleges Interference in the Exhaustion Process

It is worth noting that Johnson admitted in his initial complaint, under the penalty of perjury, that his grievances were untimely because staff refused to provide him with grievance forms. ECF No. 1, p. 17. Johnson's amended complaint is silent on the matter of exhaustion. ECF No. 10. Although Johnson is not required to plead exhaustion, he admitted in his Response that his grievances were untimely – except, now, it is because he

was intimidated and there was no response to his grievances. ECF No. 73, p. 4, 5. Johnson provided copies of his grievances relating to the allegations in his complaint, all were filed ***after*** Johnson initiated this case. Id., pp. 21-44. Johnson also maintains that grievances of reprisal may skip the informal grievance level. Id., p. 5. Johnson alleges Defendants:

1. physically and verbally intimidated him from exhausting the grievance process. Johnson was "in absolute fear at the time to complain [to anyone] or file any grievance," "not a single grievance while housed under their supervision." Id., pp. 3-5;

2. assaulted, threatened, and denied Johnson food. Johnson claims his allegations in this lawsuit are sufficient proof. Id., p. 8;

3. escorted the grievance coordinator to the inmate cells to collect grievances and had "a strong motive to steal [Johnson's] grievances." Id., pp. 5, 7;

4. intimidated Johnson so much that he could not muster "the courage" report any abuse until November 17, and December 26, 2022. Id., pp. 4, 6;

Johnson claims prison officials failed to respond to his grievances; and during the appeals process he was told his grievances were not received. Id., at 14. Johnson further argues that exhaustion does not apply to First Amendment retaliation claims and relies on Canell v. Lightner, 143 F.3d 1210, 1214 (9th Cir. 1998). Id., p. 11. Finally, Johnson maintains that he came to the federal courts first, in an attempt to stop Defendants' abuse. Id., p. 9.

Accepted as true, the complaint would not be subject to dismissal. Therefore, the Court must make specific findings to resolve the disputed factual issues relating to exhaustion. <u>Turner</u>, 541 F.3d at 1082.

## VI.   Findings of Fact

The Court considered the testimony at the evidentiary hearing, the documentary evidence provided by the parties, and the information within the record, and finds that the testimony of the witnesses for the defense was credible; and Johnson's testimony was incredible based on the following findings of fact.

### A. <u>FDOC Grievance Procedures</u>

The FDOC provides a three-step grievance procedure: "(1) file an informal grievance with a designated prison staff member (form DC6-236); (2) file a formal grievance with the institution's warden (form DC1-303); and then (3) submit an appeal to the Secretary of the FDOC" (using a second form DC1-303). <u>Chandler</u>, 379 F.3d at 1288; Fla. Admin. Code § 33-103.005-103.007. Informal grievances must be received by the designated prison official within **<u>twenty</u>** calendar days of the incident date. Fla. Admin. Code § 33-103.011(1)(a). To appeal the denial of an informal grievance, the prisoner must file a formal grievance within **<u>fifteen</u>** calendar days and attach the contested informal grievance. <u>Id.</u>, §§ 33-103.006(1)(a) & (g) and 33-

103.011(1)(b)(1). To appeal the denial of a *formal* grievance (whether filed as the initial grievance or as the appeal of an informal grievance), the inmate must, within **fifteen** calendar days of receiving the denial, file a grievance appeal to the Secretary and attach the contested grievances. Id., §§ 33-103.007(1) & (5) and 33-103.011(1)(c). Failure to attach the forms will result in the return of a grievance without processing. Id. Extensions "shall be granted when" an inmate clearly demonstrates "it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner." Id., § 33-103.11(2).

The reviewing authority has fifteen calendar days to respond to an inmate's informal grievance, twenty calendar days to respond to an inmate's formal grievance, and thirty calendar days to respond to an inmate's appeal. Id., §§ 33-103.011(3)(a) - (c).

For certain emergencies, inmates are permitted to skip step one and file a formal grievance directly with the warden's office or with the FDOC Secretary; this includes grievances of reprisal. Id., § 33-103.006(3)(c). Formal grievances must be filed "no later than 15 calendar days from . . . the date on which the incident or action being grieved occurred if an informal grievance was not filed . . ." Id., § 33.103.011(1)(b)(2). Inmates must comply with the grievance procedure to satisfy the exhaustion requirement. Untimely

and procedurally defective grievances do not satisfy the PLRA's exhaustion requirement. <u>Woodford</u>, 548 U.S. at 90-96; <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1157 (11th Cir. 2005); <u>Bryant</u>, 530 F.3d at 1378-79.

Testimony at the evidentiary hearing confirmed the protocol for the collection of inmate grievances. The grievance coordinator, accompanied by an officer, walks from cell-to-cell, on a daily basis, with a grievance lockbox. Inmates place their grievances in the small slit of the lockbox or hand it to the officer who places it into the top off the lockbox. The grievance coordinator and the warden are the only ones with the key to the lockbox. The grievance coordinator later opens it and processes the grievances by date-stamping each grievance, logging it into the system, and assigning the grievance to the proper official. Formal grievances are forwarded to FDOC's Central Office. Any grievances or appeals submitted by Johnson would have followed the procedure described.

B. <u>Johnson's Access to the Grievance Process from September 6 through November 14, 2022.</u>

Ordinarily, Johnson had twenty days to file informal grievances about the alleged abuses. Fla. Admin. Code § 33-103.011(1)(a). Based on the dates of the alleged incidents, respectively, those deadlines fell between September 26 and October 19, 2022. Cassandra Smith, an assistant administrator for the FDOC, and Lawanda Sanders, an FDOC operation

analyst, verified they reviewed the respective logs and found that Johnson filed informal grievances, formal grievances, and appeals between September 6 and November 14, 2022, but **none** were related to Defendants or the claims raised in the instant case. ECF No. 64-1, pp. 1-2, 10-11.[4] Johnson's medical records largely contradict Johnson's Response and his testimony that he could not exhaust because (1) he was denied medical attention and (2) that he was in such fear he could not report the abuse to anyone or initiate the grievance process until November 17, after he filed the instant case.

On September 7, 2022, the day after the first alleged assault, Johnson filed Formal Grievance Nos. 2209-118-018 and 2209-118-119, relating to PREA[5] allegations while at Wakulla C.I. (not FSP). ECF No. 64-1, pp. 4-5, 21-22. Johnson also filed an appeal concerning a "gaintime award." Id., p. 12. At 9:15 a.m., Johnson was subject to "reactionary" force in the form of chemical agents. ECF No. 94-1, p. 102. Johnson had threatened to place a cloth object around his neck while a medical provider was checking on him;

---

[4] Sanders' statement appears to contain a scrivener's error. ECF No. 64-1, p. 11. Paragraph 5 states that the procedures were followed for the "grievances filed by Inmate Cummings, DC #303027." Id. The remainder relates to Johnson. Id., p. 10.

[5] Referring to The Prison Rape Elimination Act, 42 U.S.C. § 15601, et seq., established to develop national standards for the prevention and punishment of prison rape.

he attempted to hang himself, albeit without "affix[ing] [the] ligature to any structure," and overdosed on thirty-five 20-mg beta blocker tablets. Id., pp. 78, 82, 86, 104. Security interceded; and "the event was unsuccessful." Id., p. 86. Johnson went to the infirmary. Id., pp. 78, 82, 91. When Nurse Collins examined Johnson at 9:35 a.m., Johnson stated, "I'm a sex offender . . . I just got here yesterday. Some officers are bothering me on the wing I'm on . . . can I just get moved to another wing[?]" Id., p. 106. The record notes:

> Inmate is an S1 with no mental health diagnosis. Inmate was offered mental health services but was hesita[nt] to accept. Inmate was much more interested in controlling housing environment by threatening self harm.
>
> . . .
>
> Inmate is not at risk for serious self injury. Inmate appears to be attempting to control housing environment by threatening self harm.

Id., pp. 106-07. Johnson was "adequately groomed," "cooperative" and "calm," made "good" eye contact, had "normal" motor activity and speech, and was "alert" but "anxious." Id. Johnson showered without soap, "[n]o obvious injuries" were seen or reported; there were "***[n]o signs of trauma***, cuts [or] abrasions on . . . [Johnson's] neck" or "respiratory distress." Id., p. 102 (emphasis added). Video confirms the same. See ECF No. 94-1, Exh. B, File 20220907091934 and File MAH05491. For fifteen minutes, Johnson whined in the shower that he wanted to die, but when an officer

asked if he was "alright," Johnson said, "yes." Id., File 20220907091934. Johnson received IV fluids and charcoal and remained "stable." ECF No. 94-1, p. 103. Medical put Johnson on 23-hour observation. Id., pp. 78, 82, 91.

Johnson alleged a significant level of physical violence and injuries on September 6 that kept him in fear of using the grievance process; so, it is significant that the medical record states there were "no signs of trauma." Id. Johnson does not have "black eyes" in any of the videos but his chest and back were red. ECF No. 94-1, Exh. B, File MAH05491.

At 12:50 p.m., Johnson was subjected to a second "reactionary force" incident and was examined by Nurse Collins. ECF No. 94-1, p. 90. Johnson "fell off [the] bed" and suffered "minimal bruising to the left cheek area. No bleeding [was] present"; he claimed the pain was a "2/10" Id., pp. 90, 93. Later, medical conducted a "well-being check." Id., p. 77. Johnson was "cooperative and calm"; his cell was "neat and tidy," and his "hygiene and grooming appear[ed] satisfactory." Id., p. 77. Johnson reported "the officers do not like him on the wing"; and he had not received a phone or his property. Id. Johnson said he was in the wrong wing because he did not have any disciplinary reports. Id. His property would be returned after processing. Id.

In the following days, Johnson had other medical visits. On September 13, Johnson signed a consent form and received a mental health evaluation. Id., pp. 63, 72-73. Johnson reported he was denied food: "I need out of my cell. Second shift officers are holding my breakfast tray. I can[']t deal with this"; he needed a pen to "write the second shift officers up" but conceded that "officers [on the] (current shift) treat me good." Id., p. 73. The record notes that Johnson "was ready to return to his cell, when he was given an ink pen and [an] inmate request." Id., p. 74. Medical asked Johnson if he wanted to join the mental health group but Johnson said he was "ok" and "just . . . need[ed] out of the cell." Id.

At the evidentiary hearing, under oath, Johnson testified that part of the reason he could not exhaust was due to the "lack of a pen" claiming "it's hard to get a pen." The Court explained to Johnson, "if it was the lack of a pen that kept you from filing [a grievance], you lose." Johnson reversed course and said, "That's not what I'm saying . . . there is no doubt in my mind I could have gotten a pen . . . I was in fear for my life."

On September 14, at 1:45 p.m., Johnson presented to triage complaining of abdominal pain, weight loss, and the denial of food: "I am having stomach pain and losing weight due to officers refusing to feed me at breakfast. I need to see a doctor about this for the stomach pain and losing

weight and to monitor [my] weight." ECF No. 94-1, p. 69. Nurse Overheul told Johnson "to file [a] grievance with officers on food trays." Id., p. 70.

On September 15, the same day Tyre allegedly choked Johnson until he passed out, Johnson presented for mental health services. Id., pp. 64-65. The record notes that Johnson "showed no signs of significant mental or emotional impairment." Id. For the fifth time, Johnson reported to medical personnel the issues that are the subject of the instant case: "some officers want to beat [him] up," but he would "kill [him]self before [he] let them kill [him]." Id., p. 65. His reported mood was "fearful." Id., p. 66. Johnson had no issue with telling medical personnel what was happening. He exercised his First Amendment right without hesitation. The problem for Johnson is he directed his complaints to the wrong persons for the purposes of exhaustion.

Between September 26 and November 10, 2022, Johnson filed twelve informal grievances, which is significant because it encompasses the period of the alleged abuse and the deadlines to file informal- and formal grievances (had Johnson chosen to file a grievance of reprisal). ECF No. 64-1, pp. 3, 6-9, 19. Johnson filed grievances to "sign off" protective management status on September 26th and 28th. Id., pp. 3, 19.

On October 3, Johnson filed a grievance about getting his legal mail. ECF No. 64-1, pp. 3, 19. On October 7, Johnson went to the prison's

emergency room regarding the rape that allegedly occurred at Wakulla; Johnson had no injuries or pain. ECF No. 94-1, p. 58. About twenty minutes later, Johnson had a mental health visit and alleged the same. Id., p. 57.

On October 12, Johnson had a mental health appointment with Dr. Weatherby and, again, discussed the alleged abuse by Defendants. Id., p. 51. Johnson reported that McKinney said, "'I kill people like you [referring to Johnson's underlying conviction]." Id. Johnson also told Dr. Weatherby he was worried about being killed in prison but claimed to be working with a lawyer about the PREA incidents and his "current situation while on C wing" where officers refused his trays and "beat[] him up." Id., pp. 51-52.

On October 17, during a sick call visit, Johnson stated he needed eyeglasses because he is nearsighted. Id., p. 50. The same day, Johnson filed a grievance asking for a tablet and, again, sought to "get off" protected management status. ECF No. 64-1, pp. 3, 19. A few days later, on October 24, Johnson filed a motion for injunctive relief against Defendants in the Middle District of Florida, even though they were not named in the case pending there. See M.D. Fla. Case No. 3:22-cv-00702-BJD-PDB, Johnson v. Garner, et al., D.E. 14. In the motion, Johnson told that court he already filed grievances against Defendants at the prison but they remained unanswered. Id. Johnson knew that was not true.

On October 21, Johnson refused a clinical appointment relating to the "alleged PREA events." ECF No. 94-1, pp. 41-43. Similarly, on October 25, Johnson refused various medical tests and then, refused to sign the refusal form in the presence of two witnesses. Id., pp. 35-37. On October 28, Johnson filed a grievance for not receiving library books. ECF No. 64-1, pp. 3, 19. Clearly, Johnson had access to the grievance process before initiating this case but did not file any against Defendants. Johnson also had access to medical services and informed medical personnel of some of the issues he had with the officers. Johnson failed to exhaust his administrative remedies at step one. Still, Johnson argues he did not file informal grievances because he chose to "skip" to step two. ECF No. 73, p. 5.

Given that the allegations could be considered "grievance reprisals," Johnson, indeed, could have initiated the grievance process at step two by filing a formal grievance. See Fla. Admin. Code § 33-103.006(3)(c). However, the time frame within which to file a formal grievance is shorter than an informal one – Johnson had fifteen days from the date of the incidents being grieved. See Fla. Admin Code § 33-103.011(1)(b)(2). Thus, Johnson should have filed formal grievances about the alleged abuses between September 21 and October 14, 2022; as explained above, he did not. Instead, Johnson discussed the alleged abuse with medical personnel.

He was not silent, as he alleges, he just did not direct his grievances to the right place.

On November 2, during a medical evaluation, Johnson reported to Nurse Kissinger that various incidents, seemingly related to the instant case, occurred on September 7, 15, 21, and 28; and on October 6, 13, 20, and 31; however, Johnson denied being injured. ECF No. 94-1, p. 18. The "ER Record" shows that Johnson reported several assaults to Nurse Vassel:

1. Tyre choked Johnson on September 15, 2022.

2. Fowler pulled Johnson out of his cell at "21:30" on September 21 and then "choked" Johnson and "slammed him against the cell doors."

3. From September 7 through September 21, Elgin and Manning refused to provide Johnson breakfast; and Tyre refused to provide Johnson lunch and dinner.

4. On September 28, during the midnight shift, McKinney came to Johnson's cell with handcuffs saying he was "searching" the cell and punched Johnson in the eye.

5. On October 3, Prock beat Johnson on B-Wing.

6. On October 6, Patterson hit Johnson in the chest three times and refused to give Johnson a lunch tray.

7. On October 20, at 7:00 a.m., Fowler threatened he would kill Johnson.

8. On October 31, Manning threatened he would kill Johnson in January.

Id., p. 31.[6] Nurse Vassel noted there were "no physical signs of injury or bodily harm" and advised Johnson to place sick calls or grievances as needed. Id., p. 32. This record was introduced at the evidentiary hearing. Under oath, Johnson denied being taken to medical on that day and testified he would never say he was not injured because he was. During his testimony, Johnson insisted that he did not have *any* medical contact from September through December 2022. The Court clarified for Johnson that it did not necessarily mean he "*went*" to medical but rather had an "*interaction*" with medical. At the Court's inquiry, Johnson eventually, admitted to making the report but denied any other medical care. The Court directed defense counsel to determine if there were any other medical records showing for Johnson between September 1 and December 1, "because if he went to the medical other than this one occasion . . . that would be relevant to me." It is clear Johnson's statement about having only one interaction with medical personnel was false. Johnson had several medical visits before and after the November 2nd visit.

On November 8, mental health assessed Johnson and found he had signs of "mild to moderate mental or emotional impairment," which could be

---

[6] Some of these alleged incidents are described in Johnson's complaint. Johnson made no allegation in his complaint that any incidents occurred in October 2022.

managed on an "outpatient basis." Id., p. 23. Johnson was "cooperative" and "calm" and then reported to Dr. Weatherby:

> I am worried, Lt said he was going to kill me because of my charges. How many time[s] do I have to get cho[]ked out or refused food. My people are pushing for me to transfer to any other CM camp. Sept 28th at 3 am, McK[i]nney popped my door and beat me up, no DRs were written. Last Tuesday I had to go to medical . . . because there aren't any cameras, they asked me for [a] list of witnesses.

Id., p. 24. Johnson also reported that it was better on M-wing than C-wing.

Id., p. 25. *The same day and without filing a prison grievance about any of the alleged incidents*, Johnson signed a civil rights complaint to initiate the instant case. ECF No. 1.

On November 9, Johnson required a mental health crisis intervention encounter for, approximately, 5 minutes. The "CIT" was "deemed successful." Id., p. 19. Nurse Skeens ordered a risk assessment for the use of chemical restraint agents and electronic immobilization devices. Id., p. 20.

During October and November, Johnson filed three formal grievances addressing medical- and dietary concerns; seeking access to legal mail, email, a tablet, and library books; and a lieutenant allegedly denied Johnson access to the kiosk. ECF No. 64-1, pp. 3, 6-8. None relate to the claims or Defendants in the instant case. Johnson had access to the grievance process to address a myriad of issues. Not only could Johnson have filed

grievances about the alleged abuse during the same period; medical personnel advised him to do so and provided him with a pen and the form on at least one occasion.

C.  Johnson's Access to the Grievance Process from November 14, 2022, through January 3, 2023.

After initiating this case, Johnson did not file any informal grievances between November 10 and November 28, 2022; but, between November 29 and January 3, 2023, Johnson filed sixteen grievances. ECF No. 64-1, pp. 19-20. One seems relevant. The log shows that, on November 29, Johnson filed Grievance No. 205-2211-0659 alleging staff made death threats but, since neither party provided an actual copy of the grievance form, there is no way of knowing whether this corresponds to any of the incidents involved in the instant case. Id., p. 19. No grievance alleged the denial of food or physical assaults. Thus, Johnson did not complete step one in the few months following the initiation of the instant case.

Again, giving Johnson the option to skip to step two, Johnson filed eight appeals from December 27 through December 29, 2022, declaring that on November 17 he filed "DC1-303" forms (formal grievances) "at the institutional level" concerning the relevant physical assaults and threats; FDOC returned seven appeals to Johnson and denied one. Id., pp. 27-29, 31, 33, 35, 37, 39, 41, 43. The appeals filed on December 27 were nearly

identical to one another.[7] Id., 27-29. In Appeal No. 23-6-00569, Johnson stated there was no response to his November 17 grievance reporting the incident where Tyre handcuffed him and put him in a chokehold on September 15. Id., p. 29. In Appeal No. 23-6-571, Johnson alleged there was no response to his November 17 grievance reporting Fowler's refusal to feed him. Id., p. 35. In Appeal No. 23-6-572, Johnson alleged there was no response to his November 17 grievance reporting Tyre's refusal to feed him. Id., p. 31. FDOC returned these appeals without action because Johnson never filed a formal grievance after November 17. Id., pp. 30, 32, 36.

Johnson filed more appeals on December 28 and December 29. Id., pp. 27-28, 41. Following the same pattern, Johnson alleged there was no response to his November 17 formal grievances about the abuse as follows:

1. Appeal No. 23-6-570 – Fowler's assault on September 21. Id., p. 33.

2. Appeal No. 23-6-573 – McKinney's threat on September 25. Id., p. 37.

3. Appeal No. 23-6-574 - McKinney's assault on September 28. Id., p. 39.

4. Appeal No. 23-6-802 – Prock's assault on September 29. Id., p. 41.

---

[7] Johnson provided duplicates of Defendants' exhibits to support his response. Accordingly, the Report uses the citation for the exhibits submitted by Defendants.

5. Appeal No. 23-6-01110 – the attack by Atterberry and Prock on September 6 and their refusal to get Johnson medical assistance. Id., p. 43.

FDOC returned the first four appeals without action because there was no formal grievance filed or no copies of the grievances were attached. Id., pp. 34, 38, 40, 42. FDOC denied Appeal No. 23-6-01110 when the Inspector General found there was "no evidence to support [the] allegations." Id., p. 44.

## VII.   Exhaustion Analysis

Johnson believes he is excused from the exhaustion requirement if he claims that Defendants' abuse and threats hindered his ability to file formal grievances within fifteen days or because the prison's responses to his grievances were untimely or were otherwise nonresponsive. ECF No. 73, pp. 3-4. If any of that was true, Johnson might be correct.

Johnson did not file any grievances or appeals against Manning; therefore, the claims against Manning are easily dismissed as unexhausted. If Johnson could file grievances against all the other defendants – timely or untimely -- he could have done so against Manning.

The first step of review under Turner requires the Court to accept as true Johnson's allegation that the grievance process was unavailable because prison officials intimidated him and did not respond to his grievances. ECF No. 73. Even if that were true, any appeal of a formal

grievance must be filed within fifteen days of receiving a denial. <u>See</u> Fla. Admin. Code §§ 33-103.007(1) & (5) and 33-103.011(1)(c). If Johnson filed any formal grievance on November 17, the prison had until December 7, 2022, to respond. Johnson argues the prison did not respond. ECF No. 73, p. 3. If true, Johnson had fifteen days, until December 22, to file an appeal; but he did not file any appeal until December 27, December 28, and December 29, which is untimely. Still, the grievance process provides an opportunity for inmates to request an extension of time to file a grievance, but Johnson did not do so. Untimely grievances will not satisfy the exhaustion requirement. <u>Woodford</u>, 548 U.S. at 92-103; <u>Bryant</u>, 530 F.3d at 1378-79.

By Johnson's own admissions in his Response, acknowledgment in his appeals, and his testimony at the evidentiary hearing, at no time before initiating this case on November 14, 2022, did Johnson complete step one or step two. Johnson testified in court and stated in his Response that he did not finally muster the "courage" to report anything until November 17, past the fifteen-day deadline. This is absolutely refuted by the record. Johnson claimed in his Response that the record proves the threats interfered with his grievance process because he "did not file a single grievance while housed under their direct supervision." The record contradicts that claim as well. Johnson filed dozens of grievances during the relevant period and in the

subsequent months. Johnson had access to grievance forms for the entire period and was not dissuaded from reporting the alleged infractions because he complained to medical personnel without hesitation. The Court finds that Johnson is just not credible.

If the Court assumed Johnson's allegations suggest some component of the grievance process was not available to him, and because "[a] prisoner need not exhaust remedies if they are not 'available," dismissal would not be appropriate at Turner's first step. See Ross v. Blake, 578 U.S. 632, 635 (2016). A remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860. Dismissal is appropriate at Turner's second step. The timing of Johnson's lawsuit was premature. "While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to Turner, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020). That is not the case here. Johnson believes he exhausted his administrative remedies twice "at the institutional level on November 17 and December 26"; and that may be true. ECF No. 73, p. 6. But that was *after* Johnson initiated this case.

Johnson fails to meet his burden that Defendants made the grievance process unavailable to him.

Johnson's contention that he was denied access to grievance forms and the courts is also not credible. Johnson filed dozens of informal grievances, but *none* related to the issues in this case. Johnson's history of filing grievances is evidence that prison officials did not make administrative remedies unavailable to him or lose or destroy his grievances, despite his allegations. See Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018). Johnson's medical reports support the same finding.

Notably, Johnson is a prolific filer and knows the exhaustion requirement well.[8] Any claim that Johnson was blocked from accessing the grievance process or the courts is belied by the fact that Johnson initiated this lawsuit while he litigated three other federal cases in three different districts. See N.D. Fla. No. 4:22-cv-00306-MW-MJF, Johnson v. Perry, et al.;

---

[8] Over the past three years, Johnson pursued at least a dozen federal cases challenging the conditions of his confinement: S.D. Fla. No. 9:20-cv-81032-DMM, Johnson v. Lindor (filed Jun. 28, 2020); S.D. Fla. No. 9:20-cv-81961-MGC, Johnson v. Alfred, et al. (filed Oct. 18, 2020); S.D. Fla. No. 9:20-cv-81963-KMW, Johnson v. Ferguson, et al. (filed Oct. 18, 2020); S.D. Fla. No. 9:21-cv-80517-BB, Johnson v. Castillo, et al. (filed Feb. 27, 2021); S.D. Fla. No. 9:20-cv-80709-RAR, Johnson v. Williams, et al. (filed Apr. 10, 2020); S.D. Fla. No. 9:21-cv-80985-AMC, Johnson v. Humphries, et al. (filed May 24, 2021); S.D. Fla. No. 9:21-cv-81275-KMW, Johnson v. Gordon (filed Jun. 12, 2021); S.D. Fla. No. 9:21-cv-81198-RLR, Johnson v. McKay (filed Jun. 28, 2021); S.D. Fla. No. 9:22-cv-80881-WPD, Johnson v. Walker, et al. (filed Jun. 9, 2022); M.D. Fla. No. 3:22-cv-702-PDB, Johnson v. Garner, et al. (filed Jun. 22, 2022); N.D. Fla. No. 4:22-cv-306-MW-MJF, Johnson v. Perry, et al. (filed Aug. 16, 2022).

M.D. Fla. No. 3:22-cv-00702-BJD-PDB, <u>Johnson v. Garner, et al.</u>; and S.D. Fla. No. 9:22-cv-80881-WPD, <u>Johnson v. Walker</u>. In all three cases, during October 2022, which is part of the relevant period, Johnson filed notices, responses to court orders, and motions. <u>Id.</u> With such a frantic litigation strategy, Johnson's claim that "it was hard" for him "to get a pen" is farfetched.

Johnson never started the exhaustion process ***before*** coming to this Court. <u>See</u> <u>Woodford</u>, 548 U.S. at 93. From an objective and subjective point of view, Johnson's ability to file dozens of grievances concerning a myriad of issues and litigate four federal cases at the same time, flies in the face of his allegations. The record shows Johnson simply did not pursue the grievance process in the proper order within the required time frame and through no fault of Defendants. Inmates have no discretion about how to exhaust; they must do so in the manner specifically prescribed by the agency's procedures. <u>Id.</u> at 90-91. Johnson's statements about exhaustion are not just internally inconsistent and refuted by the record, they are false. Factual allegations that are inconsistent need not be accepted when determining the exhaustion issue.

## VIII.   Exhaustion is a Pre-Condition to Suit

Johnson also suggests that that the exhaustion requirement is not

applicable to him for two other reasons – (1) claims asserting violations of the First Amendment are exempt from exhaustion and (2) Johnson needed the Court's assistance to stop the abuse.

### 1. Whether Exhaustion is Required for First Amendment Claims.

Johnson attempts to argue that exhaustion does not apply to First Amendment retaliation claims and relies on Canell v. Lightner, 143 F.3d 1210, 1214 (9th Cir. 1998). First, case law from the Ninth Circuit is not binding authority. This Court is bound by the decisions of the Supreme Court of the United States and the Eleventh Circuit Court of Appeals. At best, Ninth Circuit case might be persuasive if it were unresolved in the Eleventh Circuit. Second, Johnson misinterpreted Canell. Exhaustion applies in First Amendment cases. See Nunez v. Duncan, 591 F.3d 1217, 1219 (9th Cir. 2010) (affirming dismissal of First Amendment claim for failure to exhaust). It is the same in the Eleventh Circuit; exhaustion applies to First Amendment claims. See Alexander, supra. Exhaustion is required in *all* inmate suits challenging prison life, "whether . . . excessive force or some other wrong." Porter, 534 U.S. at 532.

### 2. Johnson Cannot Seek Relief in Federal Courts before Exhausting the Grievance Process.

Johnson admitted in his Response that he filed his complaint in this Court "so soon" and "attempt[ed] [to] seek[] a preliminary injunction" with the

intent "to stop [Defendants'] abuse." ECF No. 73, p. 9. This is improper and cannot satisfy the exhaustion requirement. According to Johnson's Response, he initiated the instant case because he was "in fear for his life and needed [the] court[']s involvement to stay alive" because he was refused food. Id., p. 14. At best, Johnson's statement is inaccurate, not only based on the medical records, but because ***three weeks before initiating the*** ***instant case***, Johnson made the same allegations to the Middle District of Florida in his motion for injunctive relief.[9]

Johnson's allegations the Middle District of Florida are identical to the ones he presents here -- McKinney, Prock, Fowler, Tyre, Patterson, Atterberry, Knowles, and Manning threatened Johnson, beat him, and withheld food.[10] Id., pp. 2-5. Johnson told the Middle District of Florida that he filed prison grievances about these incidents, but the prison did not respond. Id. That was a lie. Here, Johnson admitted in his Response that he ***did not*** file any grievance until November 17, which is after he initiated the instant case. ECF No. 73, p. 3-4. Johnson's own exhibits confirms the same.

---

[9] Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of the motion for injunctive relief filed in M.D. Fla. Case No. 3:22-cv-00702-BJD-PDB, Johnson v. Garner, et al.

[10] The Middle District of Florida denied the motion for injunctive relief because the individuals named in the motion were not parties to the case. See D.E. No. 16.

In short, Johnson told the Middle District of Florida one thing and this Court another.

Johnson's testimony at the evidentiary hearing was shrewd. Johnson admitted he complained to the Middle District about the incidents without filing a prison grievance because he was "thinking that maybe the outside court could do something. I figured at least notify [someone]." The Court asked Johnson, "so you felt safe enough to file a complaint but not safe enough to file a grievance. . . you didn't feel like they were going to retaliate against you for filing a civil complaint against them, but you thought they would retaliate against you for filing a grievance?" Johnson responded, "Yes, sir, because my hope, and my belief was at the time that once an outside entity, especially a federal court knew what was going on with me, [the Defendants] would hopefully slow down. They didn't."

Johnson's belief that the prison's grievance process was insufficient does not waive the exhaustion requirement for him. Courts do not interfere in prison administration. Ort v. White, 813 F.2d 318, 321-22 (11th Cir. 1987). Nor does a court contact police or prison authorities on behalf of a prisoner plaintiff because he alleges abuse by prison officials. "The exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile." Higginbottom v. Carter, 223 F.3d

1259, 1261 (11th Cir. 2000). Exhaustion must precede litigation. In other words, a prisoner cannot initiate a case and then attempt to exhaust once the suit begins. This subverts the purpose of the PLRA. <u>See</u> <u>Okpala v. Drew</u>, 248 F. App'x 72, 73 (11th Cir. 2007) (affirming *sua sponte* dismissal of an inmate's action where it was "undisputed" that the plaintiff filed his action before receiving a response to his grievance appeal); <u>see</u> <u>also</u> <u>Chambers v. Sood</u>, 956 F.3d 979, 981 (7th Cir. 2020) (pursuing administrative remedies while litigation is underway does not suffice). This is the catch here: *Johnson attempted to exhaust three days after filing the instant lawsuit*. Johnson's claim that Defendants made the process unavailable to him is futile.

Johnson had access to the process, reported alleged abuse several times to medical personnel, and filed a motion in another court with lies about having exhausted the grievance process. Then, Johnson came to this Court and made false statements in his Response and, under oath, at the evidentiary hearing.

## IX.    Compensatory and Punitive Damage Claims

Defendants also argue the claims for compensatory damages must be dismissed because Johnson did not suffer greater than *de minimis* injuries and his request for punitive damages should be dismissed because they are never necessary to correct a constitutional right. The Court need not reach

the merits of any claims because Johnson failed to exhaust his administrative remedies.

## X. Johnson's Motion for Emergency Preliminary Injunction.

The Court deferred ruling on Plaintiff's motion for emergency preliminary injunction pending resolution of Defendant's motion to dismiss. ECF No. 70. In his motion, Johnson claims that on June 9, 2023, Atterberry threw his legal files in the trash, physically assaulted him, and refused his request for medical attention. ECF No. 68, pp. 2-3. Johnson also claims prison staff refused to provide him with grievance forms. Id., p. 3. As relief, Plaintiff seeks the return of his legal property, law books, law journals, dictionary, Bible, and writing materials. Id., p. 4.

Johnson's failure to exhaust administrative remedies calls for the dismissal of this case and, thus, Plaintiff's request for injunctive relief is moot.

## XI. Johnson's False Statements to the Court Amount to an Abuse of Judicial Process.

Although dismissal is proper because Johnson failed to exhaust his administrative remedies, the Court should find that Johnson's manner of proceeding in this case amounts to an abuse of the judicial process.[11]

---

[11]Dismissal for failure to exhaust administrative remedies counts as a "strike" only when "the failure to exhaust appears on the face of the prisoner's complaint." Wells v. Brown, 58 F.4th 1347, 1350 (11th Cir. 2023) (en banc).

As explained above, Johnson made numerous false statements to this Court in his filings and, under oath, during the evidentiary hearing. Johnson lied in his Response that he was denied medical care during the relevant period and that he was in so much fear for his life that he could not report any of the incidents to anyone at the prison before November 17, 2022, which is after he initiated this lawsuit. This is not the case where a plaintiff may mistakenly believe that certain conduct rises to the level of interference with the grievance process.

Based on Johnson's statements in the Response, the Court was compelled to hold an evidentiary hearing. Rather than being honest during his testimony, Johnson perjured himself. At any stage, courts may dismiss a suit as "malicious" under 28 U.S.C. § 1915(e)(2)(B)(i). Lying under the penalty of perjury is an abuse of the judicial process that warrants dismissal. See Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998) *abrogated on other grounds by* Jones, supra; see also Attwood v. Singletary, 105 F.3d 610, 613 (11th Cir. 1997) (finding that lying about previous litigation constitutes an abuse of the judicial process warranting dismissal under § 1915(e)(2)(B)(i)).

## XII.   Conclusion and Recommendation

It is respectfully recommended that Defendants' Motion to Dismiss, ECF No. 64, be **GRANTED.** It is also recommended that the case be

**DISMISSED, in part,** without prejudice for failure to exhaust administrative remedies pursuant to 28 U.S.C. § 1997(e) and **DISMISSED**, **in part,** with prejudice as malicious under 28 U.S.C. § 1915(e)(2)(B)(i). Johnson's pending motion for injunctive relief, ECF No. 68, should be denied as moot. Finally, it is recommended the case be **CLOSED**.

IN CHAMBERS at Tallahassee, Florida, on February 29, 2024.

**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).